UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELISSA A.[1],

            Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,[2]

            Defendant.

19-CV-00838-MJR
DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 21)

      Plaintiff Melissa A. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

      For the following reasons, plaintiff's motion (Dkt. No. 12) is granted, the Commissioner's motion (Dkt. No. 17) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial in order to better protect personal and medical information of non-governmental parties.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[3]

Plaintiff filed for SSI benefits on August 27, 2015, alleging disability since August 1, 2009 due to the following: bad back; knee pain; pancreatitis; migraines; attention-deficit hyperactivity disorder; bipolar; early dementia; social anxiety disorder; and arthritis. (*See* Tr. 19, 238, 311-16)[4] Plaintiff's SSI benefits application was initially denied on January 7, 2016. (Tr. 248-53) Plaintiff timely filed a written request for a hearing on March 2, 2016. (Tr. 26-74) A hearing was held before Administrative Law Judge William M. Weir ("the ALJ") on March 5, 2018. (Tr. 39-80) Plaintiff, who appeared with a non-attorney representative, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Michael A. Klein ("the VE"). (*Id.*) At the hearing, plaintiff amended her disability onset date to August 27, 2015, the date she applied for SSI benefits. (Tr. 19, 42) On June 1, 2018, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 19-34) Plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 413-14) The Appeals Council denied plaintiff's request for review of the ALJ's determination on April 26, 2019 and this action followed. (Tr. 1-6)

Born on October 3, 1968, plaintiff was 49 years old at the time of the hearing. (Tr. 311) She graduated from high school and attended one year of college in 1999. (Tr. 337) She has worked in the past in printing and in production at a warehouse. (Tr. 338)

---

[3] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.
[4] References to "Tr." are to the administrative record in this case.

**DISCUSSION**

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since August 27, 2015, her application date. (Tr. 21) At step two, the ALJ found that plaintiff has the severe impairments of headaches, adjustment disorder, and cervicalgia. (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 22-23) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except the claimant must sit for one-half hour for every two hours of standing. She can perform simple and repetitive one and two-step tasks. She cannot perform complex work, defined as

multiple simultaneous goals or objectives or the need to independently set quality, quantity, or production standards. She cannot change general work place or tasks more than one time per day. She can have occasional public and constant coworker and supervisory contact.

(Tr. 23-32) Proceeding to step four, the ALJ found that plaintiff has no past relevant work. (Tr. 32) At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, together with the testimony of the VE, and concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as marker and cleaner. (Tr. 32-33) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, since August 27, 2015, the date her application was filed. (Tr. 33-34)

IV.    *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by improperly excluding material evidence and failing to develop the record. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) The Court agrees with plaintiff and finds that the case must be remanded.

At the start of the hearing, plaintiff's non-attorney representative noted that a number of additional medical records had recently been submitted to the Commissioner in anticipation of the hearing. (Tr. 42-43; 81-236) The ALJ countered that the additional records had been submitted one day past the deadline for consideration at the hearing. (Tr. 42-43) The ALJ then asked plaintiff's non-attorney representative if there was a reason as to why the untimely records should be admitted. (*Id.*) Plaintiff's representative stated that she had only recently become involved in plaintiff's case and that she did not know why the medical records had been submitted late. (*Id.*) The ALJ then indicated that there was no "substantial legal basis" for admitting the untimely records. (*Id.*) Likewise, in his decision, the ALJ stated that plaintiff submitted additional medical evidence less than

five days before the hearing. (Tr. 19) The ALJ indicated that he declined to admit or consider this evidence because plaintiff's representative did not provide any good reason or justification as to why the evidence was untimely. (*Id.*)

According to the Commissioner's regulations, a plaintiff must "inform [the Commissioner] about or submit any written evidence" of disability "no later than 5 business days before the date of the scheduled hearing." *See* 20 C.F.R. §416.1435(a). If the plaintiff does not comply with this five-day rule, the ALJ "*may* decline to consider or obtain the evidence" unless certain circumstances apply. *Id.* at §416.1435(a)-(b) (emphasis added). These circumstances include when: (1) the actions of the Commissioner misled the plaintiff; (2) plaintiff had a physical, mental, educational, or linguistic limitation that prevented plaintiff from informing the Commissioner about or submitting the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond plaintiff's control prevented plaintiff from informing the Commissioner about or submitting the evidence earlier. (*Id.*)

The Court finds that the ALJ abused his discretion by failing to consider the untimely evidence pursuant to an exception to the five-day rule. The record reflects that plaintiff's non-attorney hearing representative began representing her on March 5, 2018, the day of plaintiff's hearing. (Tr. 42-43; 307) Prior to that date, plaintiff had been represented by a different individual. (Tr. 254) At the time of the hearing, plaintiff's hearing representative was clearly unaware that the evidence had been submitted late. (Tr. 42-43) Thus, it does not appear to be either the plaintiff's fault or her hearing representative's error which caused the records to be submitted one day past the deadline. Instead, it appears to have been an error made by plaintiff's prior representative. The Social Security

Administration's review of comments on the proposed rule for exceptions to the five-day rule, later codified at 20 C.F.R. §416.1435(a), addressed the issue of incompetent counsel by stating that "[i]f a new representative can show that a prior representative did not adequately uphold his or her duty to the claimant, we would expect that our adjudicators would find that this would warrant an exception to the 5-day requirement." *See Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90,987-01 (Dec. 16, 2016). The Court finds that the circumstances presented here called for an exception to the five-day rule on this basis. *See Candelaria v. Saul*, 18-CV-557, 2019 U.S. Dist. LEXIS 148614 (WDNY Aug. 30, 2019) ("Because [plaintiff] retained counsel only weeks before her scheduled hearing, her attorney's prompt request for records justified an exception to the five-business-day rule.")

Moreover, the Court finds that the ALJ's failure to consider the untimely evidence elevated form over substance and was contrary to the purposes of the Act. The Act is "a remedial statute, to be broadly construed and liberally applied." *Acierno v. Barnhart*, 475 F.3d 77, 81 (2d Cir. 2007); *quoting Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969). The language of the regulation at issue, which provides that the ALJ "*may* decline to consider" late evidence, clearly gives an ALJ the discretion to admit untimely evidence when appropriate. *See* 20 C.F.R. §416.1435(a) (emphasis added).   Moreover, the purpose of the five-day rule is to ensure that there is no unreasonable delay in the "administrative decision-making process." *See* SSR 17-4p, 2017 SSR LEXIS 3 (Oct. 4, 2017). Here, plaintiff and her hearing representative were not requesting that the ALJ wait for additional records in order to either hold the hearing or render a decision. To the

contrary, the records in question had already been submitted at the time of the hearing, albeit one day late, and were available for the ALJ's immediate review. Thus, their admission was unlikely to have created unreasonable delay. Lastly, the evidence which the ALJ refused to consider was highly relevant to the disability determination. Plaintiff contends that she is disabled from work as a result of, *inter alia*, severe back pain which causes her to have great difficulty lifting, standing, walking, sitting and reaching. The evidence which the ALJ refused to admit consisted of records from plaintiff's treating neurosurgeon, Dr. Jeffrey Lewis, which shows that following an initial back surgery on December 18, 2015, plaintiff required a lumbar fusion surgery with cage and screws on June 8, 2017. (Tr. 42-43, 154, 158, 162, 171-75) Plaintiff later requested a lumbar revision surgery on September 27, 2017 because she continued to experience severe pain. (Tr. 156, 161-62) The rejected evidence also includes Dr. Lewis' opinion that plaintiff can (1) sit or stand for only fifteen minutes at one time; (2) frequently lift five pounds and only occasionally lift ten pounds; and (3) work a total of one hour per day. (Tr. 81) Thus, the evidence which the ALJ refused to admit appears to contradict his RFC finding that plaintiff is capable of fully performing the sitting, standing and walking requirements of light work, even with the additional restrictions imposed by the RFC.[5] For these reasons, the Court finds that the ALJ abused his discretion by refusing to admit or consider the untimely evidence. *See Howe v. Colvin*, 147 F. Supp. 3d 5, 7-8 (D. RI. 2015) (holding that evaluating a disability claim without "a highly relevant document...would violate the

---

[5] "Light" work involves lifting no more than 20 pounds at a time occasionally, with frequent lifting or carrying of objects weighing up to ten pounds. *See* 20 C.F.R. §§ 4040.1567(b) and 416.967(b). Even though the weight carried may be little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. (*Id.*) Here, the ALJ fashioned an RFC with no limitations as to plaintiff's ability to perform the sitting, walking or lifting requirements of light work. (Tr. 23)

tenants [sic] of the Social Security Act, raise form over substances, and be an abuse of discretion" because "an innocent clerical error like this is an 'unusual or unexpected' circumstance beyond [the plaintiff's] control as contemplated in the regulation.")

Furthermore, even if the ALJ did not abuse his discretion in failing to find an exception to the five-day rule, the ALJ still would have erred in refusing to consider the records at issue here. An ALJ has an "affirmative duty to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). In fact, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *quoting Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). By failing to consider medical records addressing plaintiff's most recent back surgeries and complaints of pain because they were untimely, the ALJ relied exclusively on stale medical evidence in fashioning the RFC. This reliance created a gap in the record which requires remand.

An ALJ may not rely on medical source opinions that are stale when determining a claimant's RFC. *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (WDNY 2018). A medical opinion may be stale if it is remote in time and does not account for plaintiff's deteriorating condition. *Hawkins v. Colvin*, 15-CV-6394, 2016 U.S. Dist. LEXIS 148380 (WDNY Oct. 26, 2016). In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of a plaintiff's deteriorating condition. *See e.g., Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (WDNY 2015), *aff'd* 652 F. App'x 25 (2d Cir. 2016) (citation omitted) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial

evidence to support an ALJ's finding."); *Girolamo v. Colvin*, No. 13-CV-06309, 2014 U.S. Dist. LEXIS 72749 (WDNY May 28, 2014) (ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery); *Biro*, 335 F. Supp.3d at 471 (consultative examiner's opinion rendered before plaintiff's knee injury and subsequent surgeries was stale and not based on a complete medical record, and thus could not provide substantial evidence for ALJ's finding that plaintiff was not disabled.); *Morales v. Comm'r of Soc. Sec.*, 17-CV-341, 2019 U.S. Dist. LEXIS 38692 (WDNY Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia surgeries" and was rendered before two additional surgeries).

Here, the only medical opinion relied on by the ALJ in determining plaintiff's physical RFC was that of consultative examiner Dr. Hongbiao Liu, M.D., following a single examination of plaintiff on November 23, 2015. (Tr. 32; 660-63) The ALJ erred in relying on this opinion because it was stale. The record shows that plaintiff's condition deteriorated after Dr. Liu's examination. In fact, plaintiff underwent three significant surgeries following Dr. Liu's opinion. Plaintiff underwent her first back surgery in December of 2015. (Tr. 747) Following the December 2015 surgery, she had persistent complaints of neck and back pain as well as clinical findings showing severe stenosis, disc herniation, degeneration and fluid retention. (Tr. 154, 156, 162, 800-01, 805-06, 986, 989, 993, 997, 999, 1001-02, 1014, 1017, 1050). Plaintiff then underwent a lumbar surgery on July 8, 2018. (Tr. 171-75) On September 27, 2017, Dr. Lewis offered a revision surgery because plaintiff continued to experience pain. (Tr. 161-62) At the hearing, plaintiff testified that she proceeded to have lumbar revision surgery in November of 2017. (Tr. 53) Thus, it appears that in evaluating the severity of plaintiff's physical impairments,

the ALJ failed to consider plaintiff's three surgeries during the relevant time period as well as plaintiff's complaints of pain and the clinical findings that lead to each of these surgical interventions.

In light of the obvious staleness of Dr. Liu's opinion, the ALJ could not rely on it. By also refusing to admit recent and relevant evidence under the exception to the five-day rule, namely Dr. Lewis' opinion evidence and medical records discussing plaintiff's surgeries, the ALJ created a gap in the record which requires remand. *See Smith v. Saul*, 17-CV-6641, 2019 U.S. Dist. LEXIS 102689 (WDNY June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence.") Therefore, this matter is to be remanded to the Commissioner to consider plaintiff's claim in light of all of the relevant evidence, including the medical evidence which was submitted prior to the hearing but deemed untimely by the ALJ. If necessary, the Commissioner should also consider further development of the record regarding plaintiff's lumber revision surgery in November of 2017 and should consider requesting an opinion from either a treating physician or consultative examiner regarding plaintiff's physical functional capabilities since the time of her surgeries.

Plaintiff also argues that the ALJ erred by failing to classify her lumbar herniation and stenosis as severe impairments at step two of the sequential process as well as by failing to evaluate an opinion by a treating neurologist regarding her headaches. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) Because the Court has found that remand for further development of the record is necessary, it need not and does not reach these issues. On remand and after further-development of the record, the Commissioner should

revisit his step two determination and should reconsider the opinions of all treating or examining physicians in light of the further developed record as a whole. *See Vazquez v. Saul*, 18-CV-242, 2019 U.S. Dist. LEXIS 139858 (WDNY Aug. 16, 2019) (remanding due to ALJ's reliance on stale medical opinion and concluding that "[b]ecause the remaining issues may be affected by the ALJ's treatment of this case on remand, this [c]ourt does not reach them."); *Moreau v. Berryhill*, 3:17-CV-00396, 2018 U.S. Dist. LEXIS 41743 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would constitute legal error justifying remand on their own.")

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:    March 24, 2021
          Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

14